1
2
3
4
5                              UNITED STATES DISTRICT COURT
6                             NORTHERN DISTRICT OF CALIFORNIA
7
8    MICHAEL J. HICKS,                              No. C 08-1146 SI (pr)
9              Plaintiff,                           **ORDER (1) DENYING MOTION TO
                                                    DISMISS, (2) FOR SERVICE OF
10        v.                                        PROCESS ON BATTIN, AND (3)
                                                    SETTING BRIEFING SCHEDULE**
11   M. S. EVANS, warden,
12             Defendant.
13   _____/
14
15                                      **INTRODUCTION**
16        Michael J. Hicks, a California prisoner currently housed at Salinas Valley State Prison, filed this
17   *pro se* civil rights action under 42 U.S.C. § 1983.  Defendants now move to dismiss on the grounds that
18   (a) the complaint fails to state a claim upon which relief may be granted, and (b) Hicks did not exhaust
19   his administrative remedies before filing this action.   For the reasons explained below, the court will
20   deny the motion to dismiss.  The court also will rule on several miscellaneous matters.
21
22                                      **BACKGROUND**
23   A.    Allegations Of The Second Amended Complaint
24        In his second amended complaint, Hicks alleged the following:
25        On May 23, 2007, Hicks was transferred into psychiatric housing at Salinas Valley State Prison.
26   He informed senior MTA Battin that he had preferred legal user status and requested return of his
27   property to show he had court deadlines and requested physical access
28

to the law library.  Battin said he would look into the matter with defendant Linda Neal, the program director.  On June 6, Hicks filed an inmate appeal, to which MTA Battin gave the informal response. On June 11, 2007, Hicks wrote a letter to warden Evans to protest being excluded from physical law library access.  The warden turned the letter over to defendant L. Trexler for a written response.  On June 18, Hicks was interviewed by defendant Melvin who offered to provide a law library computer in exchange for plaintiff withdrawing the inmate appeal.  Hicks withdrew the appeal.  On June 21, defendant Trexler responded to Hicks' letter to warden Evans.  Trexler stated that Hicks had been using the paging system and could continue to do so to meet his needs.  Copies of the letter were sent to warden Evans and chief deputy Neotti.  Hicks reinstated his inmate appeal on July 4.  Defendant Neotti granted his appeal at the second level on August 3, but Hicks did not receive the physical access to the law library that the response stated was being provided.  Hicks contends that, as a result of the failure to provide him law library access or a computer, he suffered adverse consequences in several cases he was litigating – consequences he describes at pages 5-8 of the second amended complaint.

The court reviewed the second amended complaint, and determined that it appeared to state a claim for violation of the constitutional right of access to the courts "based on the failure to provide Hicks physical access to a law library and/or a computer on which to do legal research and instead requiring that he use a paging system to obtain legal materials."  Docket # 36 (Order of Service), p. 4. The court further explained:

> Only one of the adverse consequences Hicks allegedly suffered counts as an actual injury for purposes of the access-to-the-courts claim.  Liberally construed, the allegations in the second amended complaint that Hicks was unable to file an opposition to a demurrer to a complaint about prison conditions, *see* Second Amended Complaint, ¶ 20, suffice to allege an actual injury.[1]

Docket # 36 (Order Of Service), p. 4 (footnote in source).

B.    The Underlying Action That Was Lost

The action in which Hicks allegedly suffered a loss, and that allegedly shows the requisite

---

[1]Even this situation may not ultimately be determined to be an actual injury because the exhibit that allegedly shows the adverse event shows that the demurrer was granted but that Hicks was given leave to file and serve an amended complaint.  See Second Amended Complaint, Ex. F.  Hicks' allegation that the demurrer was sustained is sufficient for pleading purposes to state a cognizable claim; however, if he was able to amend and proceed with the action, actual harm may not have resulted.

"actual injury" for his access-to-the-courts claim, was a case he filed in state court about his conditions of confinement. The substance and procedural history of that underlying action are recounted because several of the details matter for purposes of evaluating defendants' motion to dismiss.

*Michael Hicks v. Gary Whitted*, Sacramento County Superior Court Case No. 06AS05152, was filed on November 30, 2006. Defendant Whitted filed a demurrer on an unidentified date. The court's tentative ruling was to sustain the unopposed demurrer "with leave to amend for failure to state a cause of action for the reasons set forth in defendant's memorandum of points and authorities." CDCR 016. A hearing on the demurrer was held on June 28, 20007, at which Hicks was listed as being present. After the hearing, the court affirmed its tentative ruling except that it gave Hicks additional time to file and serve an amended complaint. *Id.* The action was dismissed on July 25, 2007 because Hicks had failed to file an amended complaint. CDCR 061.

The *Whitted* complaint concerned an incident that had occurred at the California State Prison - Sacramento when Hicks was housed there in November 2006. Hicks alleged in the *Whitted* complaint that, on November 6, 2006, after inmate Teters urinated in a milk carton and threw it on Hicks, Hicks asked correctional officer Whitted to be taken back to his cell to wash himself. Whitted allegedly refused to investigate Hicks' claim that Teters had another milk carton with urine in it, and demanded that Hicks return the electric shaver that Hicks had borrowed. Hicks allegedly refused to relinquish the shaver, and eventually got hold of Whitted's radio microphone and refused to relinquish that also. Hicks further alleged that, eventually, an escort arrived to take Hicks to the law library, so Hicks returned the items he had held "hostage" and went to the library. CDCR 008. Exhibits to the *Whitted* complaint showed that Hicks was disciplined with a loss of 10 yard days based on a rule violation report written by Whitted that stated that Hicks had been the instigator, "shouting obscenities and derogatory remarks to other inmates causing a disruption to the yard. Hicks' actions caused continuous arguing and throwing of toilet water back and forth with other inmates." CDCR 012 - CDCR 014.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief can be granted." A motion to dismiss should

be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41 (1957)).  The court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010).  The court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001).  In considering a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings.  *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

A Rule 12(b)(6) motion is not the right vehicle to challenge a prisoner's failure to exhaust administrative remedies.  Instead, non-exhaustion is a matter in abatement, which defendants may raise by way of an unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of non-exhaustion in a Rule 12(b) motion.  *Id.*  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  *Id.* at 1119-20, citing *Ritza v. Int'l Longshoremen's & Warehouse-men's Union*, 837 F.2d 365, 368 (9th Cir. 1988).  The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial).  *See id. Wyatt* and *Ritza* allow this court to resolve factual disputes, but only with regard to the exhaustion issue.

**DISCUSSION**

A.    The Misguided Requests For Judicial Notice

Before discussing the motion to dismiss, the court addresses the requests for judicial notice filed by defendants (Docket # 57) and plaintiff (Docket # 85-1).  The requests reflect a fundamental misunderstanding of the judicial notice process and erroneous belief that it is the normal way to present evidence to the court.  For example, plaintiff wants the court to judicially notice discovery responses and defendants want the court to judicially notice declarations – erroneously assuming that, since the documents were filed in a court action, this court can accept the contents thereof as a fact not subject

1  to reasonable dispute.

2          The court can judicially notice facts that are not subject to reasonable dispute in that they are

3  generally known within the territorial jurisdiction of the court or they are capable of ready determination

4  by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  "As a

5  general rule, a court may not take judicial notice of proceedings or records in another cause so as to

6  supply, without formal introduction of evidence, facts essential to support a contention in a cause then

7  before it."  *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983);

8  *see also Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir.), *cert. denied*, 540 U.S. 810 (2003)

9  ("Factual findings in one case ordinarily are not admissible for their truth in another case through

10 judicial notice"); *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829-31 (5th Cir. 1998) (court could

11 not take judicial notice of another court's finding that a defendant was a state actor; the determination

12 was a legal conclusion rather than an adjudicative fact and in any event was not beyond reasonable

13 dispute).  Assertions in documents filed with a court or in an administrative proceeding are not judicially

14 noticeable just because they are in the file.  "There is a mistaken notion that taking judicial notice of

15 court records . . . means taking judicial notice of the existence of facts asserted in every document of

16 a court file, including pleadings and affidavits.  The concept of judicial notice requires that the matter

17 which is the proper subject of judicial notice be a fact that is not reasonably subject to dispute.  Facts

18 in the judicial record that are subject to dispute, such as allegations in affidavits, declarations, and

19 probation reports, are not the proper subjects of judicial notice even though they are in a court record."

20 B. Jefferson, California Evidence Benchbook (3d ed. 2003 update), § 47.10.

21         Documents from other court files can be used for judicial notice purposes, but those purposes

22 are quite limited.  The court can take judicial notice that certain filings exist, that certain documents

23 were filed, and the dates on which those filings were made if a party has requested it and submitted the

24 court filings with filing stamps from the court.  But that is a far cry from being able to judicially notice

25 that the contents of those filings are true.  The court cannot take judicial notice of the truthfulness of any

26 of plaintiff's statements in the *Whitted* action (although it could judicially notice that he had made those

27 statements in filings in *Whitted*) and it cannot take judicial notice of the truthfulness of any of

28 defendants' statements in declarations or discovery responses in *Whitted*.  The court earlier explained

why the inmate appeal and responses thereto could not be judicially noticed, *see* Docket # 63, and need not repeat that explanation.

Turning now to the particular requests, the court takes judicial notice of the existence of items 1-4, 7 and 8 in defendants' request for judicial notice, and items 1 and 2 in plaintiff's request for judicial notice. The requests for judicial notice are otherwise denied.

B.    The Rule 12(b)(6) Motion

A constitutional right of access to the courts exists, but to establish a claim for any violation of the right of access to the courts, the prisoner must show that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 355. Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement of which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint. *See id.* at 351.

Defendants contend that the second amended complaint fails to state a claim upon which relief may be granted on the access-to-the-courts claim for several reasons. First, defendants contend that any adverse consequence in the *Whitted* case would not support an access-to-the-courts claim because the federal constitutional right does not protect state tort cases such as *Whitted*, which they described as asserting state law claims for negligence and intentional infliction of emotional distress. Their argument is unpersuasive. Although Hicks did list the cause of action as for "general negligence" and stated that he had suffered intentional infliction of emotional distress, CDCR 004, the *Whitted* complaint also mentioned federal constitutional rights. Hicks alleged in his complaint that Whitted had failed to provide "assistance to avoid an attack of another inmate throwing urine on him," CDCR 008, and mentioned the Eighth Amendment as a basis for his "state tort complaint" against Whitted, CDCR 007. Hicks also

alleged that he was punished without "'due process' under the 14th Amendment of the U.S. Constitution," CDCR 0101. The *Whitted* complaint was about the conditions of confinement, and, liberally construed, alleged violations of Hicks' federal constitutional rights. It thus was within that class of cases covered by the right of access to the courts as described by *Lewis v. Casey*. *Lewis v. Casey* noted that the actual injury requirement was not satisfied by every type of frustrated legal claim; instead, nearly all of the previous cases from the Court had been limited to "attempts by inmates to pursue direct appeals," and, eventually, the Court "extended this universe of relevant claims only slightly, to 'civil rights actions' – i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" *Lewis v. Casey*, 518 U.S. at 354. In *Lewis v. Casey*, the Court stated the rule as requiring that inmates be provided the tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental and perfectly constitutional consequences of conviction and incarceration." *Id.* at 355 (emphasis in source). The *Whitted* complaint was a complaint about the conditions of confinement and mentioned federal constitutional rights that allegedly had been violated, notwithstanding Hicks' failure to identify 42 U.S.C. § 1983 as the legal basis for the federal constitutional claims.

Second, defendants argue that the *Whitted* dismissal doesn't support an access-to-the-courts claim because prison officials are not required to ensure that prisoners are able to litigate effectively once in court. *Lewis v. Casey* does limit the time frame during which the right of access to the courts exists. The right of access to the courts is the right to bring to a court a grievance. *See id.* at 354. The state has no duty to "enable the prisoner to discover grievances and to litigate effectively once in court." *Id.* (emphasis omitted). The prison needs to provide the tools inmates need to attack their sentences (on direct appeal or on habeas) and to raise constitutional challenges to the conditions of their confinement. If inmates are required to comply with particular pleading requirements "in order to challenge the conditions of their confinement," *Lewis v. Casey*, 518 U.S. at 355, the conferral of the capability to bring such a challenge will last long enough to allow the inmate to comply with those requirements. The right does not end as soon as the very first document in a court case is filed. *Cf. Hebbe v. Pliler*, 627 F.3d 338, 342-43 (9th Cir. 2010)(prisoner's right to file supplemental brief after counsel filed a Wende brief

on appeal was protected by the right of access to the courts found in *Lewis v. Casey*). The stage of the litigation where the prisoner is presenting claims to the court includes challenges to the pleadings, and amendments necessitated by such challenges. In other words, the right lasts throughout the pleading stage of a case. This is especially appropriate where, as here, the court has dismissed the original pleading for an apparently curable problem.[2]

Third, defendants argue that the right of access to the court was not violated because Hicks was able to appear and argue at the hearing on the demurrer, and then chose to abandon his suit. This argument is rejected because of the problem explained in footnote 2 above (i.e., with the incomplete record, the court is unable to see the particular reason for the demurrer being sustained). Further, Hicks does not allege that he voluntarily gave up on the *Whitted* complaint. He may have given up because he couldn't do research (and that appears to be the gist of his second amended complaint). Moreover, defendants' assertion that plaintiff had conceded in another case that he "was given access to a computer to conduct legal research, . . . but he gave up his pending litigation," Motion to Dismiss, p. 7, goes beyond the permissible scope of a pleading challenge. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (while evidence outside the complaint called into question the correctness of plaintiff's allegations in the complaint, that evidence should not be considered in ruling on a Rule 12(b)(6) motion). Even if that allegation in another case could be considered, it wouldn't help defendants because Hicks' allegation on that page (CDCR 024) was that he was given access on August 3, 2007, which would have been of little help in the *Whitted* action that was dismissed a week earlier.

Fourth, defendants argue that there is no right to "physical access to a prison law library." Motion to Dismiss, p. 7. They are correct that the right is not a right to a law library but instead is a right of access to the court, *see Lewis v. Casey,* 518 U.S. at 350, 356. Hicks' allegations and inmate

---

[2]The state court dismissed the *Whitted* complaint for failure to state a cause of action "for the reasons set forth in defendant's memorandum of points and authorities." CDCR 016. Defendants failed to submit a copy of the defendant's brief in *Whitted* with their motion to dismiss, so this court has no way of figuring out what the problem was in the *Whitted* complaint. However, one can assume from the fact that leave to amend was granted that the defect was potentially curable. It cannot be determined from the record whether the problem was one that actually necessitated legal research, but that will be assumed at this stage.

appeals are somewhat confusing – mostly due to his focus on a dispute about whether a particular computer would be made available to inmates in the DMH program and a dispute about some prison staff's alleged representations about the computer – but the allegations of the second amended complaint, liberally construed, allege that he was denied access to the means to do legal research. Defendants may later provide evidence that whatever legal research tools were provided to Hicks were sufficient to satisfy their constitutional obligation, but at the pleading stage, that cannot be decided.

Fifth, defendants argue that warden Evans has no liability.  Hicks does not appear to  allege respondeat superior liability.  Hicks alleges that he sent a letter to Evans "in protest to being precluded from physical law library access." Docket # 34, p. 4.  That is sufficient to plead a claim against warden Evans.  *See generally Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006).  The fact that Evans turned the letter over to an assistant to respond to it does not absolve him of all liability.

Sixth, defendants argue that Hicks cannot state a claim based on his dissatisfaction with the inmate appeals process.  This argument misreads the second amended complaint.  As to defendants whose alleged liability is based on denial of inmate appeals, their liability would be for a violation of the right of access to the courts.  Their liability is *not* for a procedural due process violation, because a prisoner has no due process right to a properly functioning inmate appeal system.  *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993).   If the defendants who denied inmate appeals had only denied appeals about a problem that had already occurred and was complete (e.g., a law library closure that had occurred months earlier), there would be no liability for a constitutional violation; however, where the problem is an ongoing constitutional violation and the request is made in an inmate appeal to remedy the ongoing problem, liability for that problem can be based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request from the inmate.  *See generally Jett*, 439 F.3d at 1098 (supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help).

Defendants' argument that Hicks' pleading "contains no facts to demonstrate that the Defendants had authority to provide Plaintiff with access to the law library while he was participating in the DMH program," Motion to Dismiss, p. 9, calls for factual determinations improper on a motion to dismiss, which tests the sufficiency of the pleading.  For pleading purposes, it is sufficient that the prisoner's

allegations, liberally construed, allege that prison officials had control over a situation and failed to abate an ongoing constitutional violation. Whatever division of responsibilities for the DMH prisoners exists is a matter defendants can prove in a summary judgment motion or at trial, when they are not confined to the allegations of the second amended complaint.

Eighth, defendants argue that they are entitled to qualified immunity against Hicks' claim. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001)). Defendants first argue that there was no constitutional violation. The court has determined that plaintiff had pled a cognizable claim for denial of the constitutional right of access to the courts and has rejected defendants' various pleading challenges to that claim. Defendants also argue that "[i]t would not be clear to a reasonable correctional official that denying a violent and dangerous inmate like Plaintiff physical access to the law library would be unlawful." Motion To Dismiss, p. 13. However, this argument depends on consideration of evidence outside the pleadings, which is not allowed at the Rule 12(b)(6) motion stage. As Hicks has not pled that he was disruptive and violent, and the court cannot take judicial notice that he was disruptive and violent, a motion to dismiss that depends on such a fact cannot be granted. Defendants remain free to present their qualified immunity defense in a motion for summary judgment, because at that stage of the case the court can look beyond the face of the pleadings. (If defendants want to argue that plaintiff was disruptive and violent, they will need to improve their evidentiary presentation beyond a simple assertion that he had amassed hundreds of classification points.)

Ninth, defendants argue in their reply that Hicks is impermissibly attempting to expand his access-to-the-courts claim. Defendants argue that the "only issue" is whether Hicks' right of access to the courts was violated when he was unable to file a written opposition to a pending demurrer, and that he attempted in his opposition to expand it to include injury due to being unable to file an amended complaint by the deadline set by the superior court when the *Whitted* demurrer was sustained. Reply,

p. 2.  Giving the second amended complaint the liberal construction to which it is entitled, the allegations about the *Whitted* complaint fairly encompass both Hicks' inability to file a written opposition as well as his inability to prepare the amended complaint that was necessary after the demurrer was sustained.  *See* Second Amended Complaint, p. 6 ("plaintiff was unable to oppose a motion for demurrer"); *id.* ("he was unable to even file a responsive pleading to a demurrer motion.  He had no idea in how to respond, no [index] or table of contents to draw upon or reference material to study.")

For the foregoing reasons, defendants' Rule 12(b)(6) motion to dismiss is DENIED.

C.   The Unenumerated Rule 12(b) Motion To Dismiss For Non-Exhaustion

Defendants argue that the second amended complaint must be dismissed because at least part of the access-to-the-courts claim is unexhausted.  Upon initial review of the original complaint filed by Hicks, the court had dismissed the complaint as unexhausted.  Docket # 7.  Hicks appealed the dismissal, and the Ninth Circuit reversed and remanded.  The Ninth Circuit determined that the exhaustion requirement *was* satisfied in this case:  "[T]he record shows that Hicks' grievance was granted at the second level and therefore he was not required to seek additional administrative review."  Docket # 21, p. 2.  This court is not free to revisit the exhaustion question.  The motion to dismiss for non-exhaustion is DENIED.

D.   Miscellaneous Motions

Plaintiff's motion to file a third amended complaint is DENIED.  (Docket # 61, # 64.)  The earlier pleadings did not state a claim against Linda Neal, *see* Order of Service, ¶. 3-4, and the additional allegations in the proposed third amended complaint do not do so either.  The proposed third amended complaint also does not allege a cognizable conspiracy claim.  Conclusory allegations of a conspiracy which are not supported by material facts are insufficient to state a claim under § 1983.  *Woodrum v. Woodword County*, 866 F.2d 1121, 1126 (9th Cir. 1989); *see also id.* (plaintiff must allege that a constitutional right was violated – conspiracy, even if established, does not give rise to liability under § 1983 unless there is such a deprivation).  The operative pleading remains the second amended

11

complaint.

Plaintiff has requested that defendant Battin – who earlier was dismissed because plaintiff failed to provide an address at which he could be served with process – be added back into the action and served with process at a new address plaintiff has now found for him.  The request is GRANTED. (Docket # 80.)  The court will direct the U.S. Marshal to attempt service at the Department of Mental Health.  If Battin cannot be served at that address, he will be dismissed again without further notice or further leave to amend.

Plaintiff has filed a "notice of potential conflict and request for injunction," requesting the court to prevent his possible transfer from Pelican Bay to Salinas Valley State Prison.  Plaintiff is not entitled to an injunction because he came nowhere near to showing a likelihood of success on the merits or that he is likely to suffer irreparable harm in the absence of preliminary relief.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  The motion is DENIED.  (Docket # 78.)

Plaintiff's "motion for clerk's file and docket sheet, request for time extension, request for Monterey Clerk's transcript and all discovery request and responses with Attorn. Gen" is DENIED. (Docket # 79.)  In that motion, plaintiff contended that he had not received his legal property and wanted copies of various documents.  Since the filing of that motion, plaintiff's filings appear to indicate that he has received his legal property.  Even if some of the legal property is missing, there is no showing that defendants had anything to do with the situation.

Plaintiff's requests for extension of time to file his opposition to defendants' motion to dismiss are GRANTED.  (Docket # 82, # 84.)  The opposition filed on December 12, 2011 is deemed timely filed and has been considered by the court in its evaluation of defendants' motion to dismiss.

Plaintiff has requested that counsel be appointed to assist him in this action.  A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances.  *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).  This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved.  *See id.*  Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1).  Here, exceptional circumstances requiring the appointment of counsel are not

evident. Plaintiff's numerous motions, requests and filings adequately demonstrate his ability to litigate his claims. The request for appointment of counsel is DENIED. (Docket # 83.)

## CONCLUSION

1.      Defendants' motion to dismiss is DENIED. (Docket # 56.)   The denial of the motion to dismiss says nothing about the merits of plaintiff's claims and only concerns the sufficiency of the pleading. At the end of this order, the court will set a briefing schedule for dispositive motions.

2.      Plaintiff's request to restore J. Battin as a defendant is GRANTED. (Docket # 80.) The court vacates the dismissal of defendant J. Battin, who earlier was dismissed without prejudice because he could not be located for service of process. Battin is now back in the action as a defendant.

3.      The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the second amended complaint and a copy of all the documents in the case file upon J. Battin, using this address:

J. Battin
California Department of Mental Health
1600 9th Street, Room 435
Sacramento, CA 95814

The clerk also shall send a *courtesy copy* of that summons, second amended complaint and this order to Barbara Zweig, Senior Staff Counsel at California Department of Mental Health at that same address.

4.      Plaintiff's motion to file a third amended complaint, request for an injunction, motion for files, and request for appointment of counsel are DENIED. (Docket # 61, # 64, # 78, # 79, # 83.)  Plaintiff's requests for extension of time to file his opposition are GRANTED; the opposition is deemed to have been timely filed. (Docket # 82, # 84.)

5.      The court now sets the following new briefing schedule for dispositive motions on the remaining claims:

a.      Defendants must file and serve their dispositive motion no later than **May 4, 2012**.

13

b.     Plaintiff must file and serve on defense counsel his opposition to the dispositive motion no later than **June 8, 2012**. Plaintiff is reminded to review the caution about summary judgment motions in the Order of Service.

c.     Defendants must file and serve their reply brief (if any) no later than **July 2, 2012**.

6.     This case is now almost four years old. Both defendants and plaintiff are cautioned that, due to the advanced age of this case, extensions of deadlines generally should not be expected in the future. They should act with utmost diligence to comply with the court's deadlines. Plaintiff is specifically cautioned that the court will be unreceptive to future requests for extensions of time from him if he simultaneously is peppering the court with other miscellaneous motions, requests and notices rather than trying to comply with the deadline set by the court. (Between the filing of defendants' motion and the filing of Hicks' opposition thereto almost six months later, he filed fifteen other documents.)

IT IS SO ORDERED.

Dated: February 7, 2012

SUSAN ILLSTON
United States District Judge

14