1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                  NORTHERN DISTRICT OF CALIFORNIA
7
8  MICHAEL J. HICKS,                    No. C 08-1146 SI (pr)
9         Plaintiff,                    **ORDER GRANTING SUMMARY
                                        JUDGMENT FOR DEFENDANTS**
10     v.
11 M. S. EVANS, warden,
12        Defendant.
   _____/
13
14                         **INTRODUCTION**
15        Michael J. Hicks, a California prisoner currently housed at Salinas Valley State Prison,
16 filed this *pro se* civil rights action under 42 U.S.C. § 1983.  Defendants now move for summary
17 judgment on plaintiff's remaining claim.  Plaintiff opposes the motion.  For the reasons discussed
18 below, the motion will be granted and judgment entered.
19
20                         **BACKGROUND**
21        The following facts are undisputed unless otherwise noted:
22
23 A.     Hicks and the DMH Program
24        Michael Hicks is serving a 35-year prison sentence following his 1994 conviction for rape
25 and oral copulation with various sentence enhancements.  As of May 2007, he had amassed 887
26 classification points – more than ten times the minimum number needed for an inmate to be put
27 in a level IV prison.  His very high score and housing in the security housing unit ("SHU") were
28 due to his numerous prison rule violations and threats to staff.

Hicks was transferred from the California State Prison - Sacramento ("CSP-Sacramento") SHU to Salinas Valley's Department of Mental Health ("DMH")  psychiatric program, arriving on May 23, 2007.  Hicks was one of the first inmates to arrive for the program when the DMH extended its psychiatric program to "D" Facility.

On or about June 7, 2007, Hicks appeared before the Institutional Classification Committee ("ICC").  Associate warden Trexler was the chairperson of the ICC.  After discovering that Hicks had six serious rule violation reports and several more pending, the ICC determined that he should be maintained on maximum security custody status and continue to be housed in the SHU.  He was then turned over to the DMH.  According to Trexler, the "ICC determined that Mr. Hicks presented such a threat to everyone he came in contact with, that it was necessary to keep him in mechanical restraints whenever he was outside of his cell."  Docket # 98, p. 2.[1]

On June 21, 2007, a rule violation report was written that charged Hicks with threatening staff that day.[2]  Docket # 98-1, p. 2.  Hicks later was found guilty of threatening staff.  *See id.*

The parties disagree as to whether officials of the California Department of Corrections and Rehabilitation ("CDCR") were responsible for law library access for inmates in the DMH psychiatric program at Salinas Valley.  Defendants present evidence that DMH staff rather than CDCR officials regulate access to the law library.  Hicks' evidence – such as CDCR officials' responses to his grievances and letter – raises a triable issue of fact that CDCR officials have

---

[1]In a June 21, 2007 memorandum to Hicks, Trexler responded to Hicks' complaints about custodial status and law library access.  Trexler wrote that the ICC that met on June 7, 2007 had concurred with the decisions of the ICC that had met on April 3, 2007 regarding Hicks' custody status.  Trexler stated: "You will remain on SHU status until such time that DMH clinical staff has observed your behavior and they believe you to be stabilized.  At that time they will request you return to ICC for reconsideration of your SHU status.  You must demonstrate a period of non-aggressive or assaultive behavior to be considered for SHU term suspension.  Your last RVR was for threatening staff on March 1, 2007, another SHU offense."  Docket # 34-1, p. 23.  Absent some change in his SHU status, Hicks' minimum eligible release date from the SHU was March 18, 2010.  *See id.*

[2]According to the reporting employee, MTA Bito, Hicks was yelling for the television to be turned down; when MTA Bito said to another MTA "maybe just turn it off," Hicks turned his anger toward MTA Bito and shouted various insulting and profane comments to her.  According to MTA Bito, Hicks then stated: "'Are you scared you fucking bitch?' 'You don't have anything to do with this program.' 'You're only doing 1 to 1, now you're scared, you're facing the wall, you hear me bitch. 'I'll give you hell from me and I'll do something to you if I get a chance to get out of here.'"

2

1   responsibility for law library and paging system access for inmates in the DMH psychiatric

2   program.  For purposes of this motion, the court accepts as true non-movant Hicks' version of

3   the evidence.

4       In 2004 and 2006, CDCR officials issued memos stating that inmates were to be permitted

5   physical access to prison law libraries when safety and security permitted.

6

7   B.      The Sacramento County Superior Court Litigation

8       Hicks filed an action entitled *Michael Hicks v. Whitted*, Sacramento County Superior

9   Court Case No. 06AS05152, on November 30, 2006.  The complaint concerned an incident that

10  had occurred at the CSP - Sacramento in November 2006.

11      On April 20, 2007, the *Whitted* defendant filed a demurrer to the complaint.  *See* Docket

12  # 113-1.  The hearing date listed on the moving papers for the demurrer was June 28, 2007.

13  *See* Docket # 113-1, p. 2; *see also* Cal. Rule of Court 3.1320(d).  The memorandum of points

14  and authorities in support of the demurrer urged that the complaint failed to state a cause of

15  action for negligence or for intentional infliction of emotional distress.  *See* Docket # 113-2.  The

16  memorandum of points and authorities cited five state court cases, including cases that,

17  according to the movant, identified the elements of a prima facie case of negligence and the

18  elements of a prima facie case of intentional infliction of emotional distress.  *See id.*

19      Hicks filed no opposition to the demurrer.

20      On June 28, 2007, a hearing was held on the demurrer, at which the parties argued the

21  matter.  *See* Docket # 112, pp. 5, 9.  The superior court  sustained the demurrer.  The tentative

22  ruling stated: "The demurrer is unopposed and is sustained with leave to amend for failure to

23  state a cause of action for the reasons set forth in defendant's memorandum of points and

24  authorities.  [¶] Plaintiff may file and serve an amended complaint no later than July 9, 2007. "

25  Docket # 112, p. 9.  After the hearing, the court "affirmed its tentative ruling with the following

26  modification: [¶] Plaintiff may file and serve an amended complaint no later than July 30, 2007."

27  *Id.*

28      Hicks did not file an amended complaint in the *Whitted* action.  There is no evidence that

he sought an extension of time, or otherwise filed anything in the several months after the demurrer was sustained.  There also is no evidence that he attempted to appeal the dismissal in *Whitted*.

At the relevant time, a paging system was available to Hicks.  The paging system "is a method of library access where an inmate makes a written request for certain research materials. The requested materials are either photocopied out of the library's collection, or downloaded from DMH's online Lexis account, then delivered to the inmate in his cell."  Docket # 98, p. 3.

Hicks states that he was unable to file the amended complaint or an opposition to the demurrer: "I was so stymied by the inadequacies of the 'paging system' that I was unable to file an (sic) responsive pleading.  I had no idea how to respond, no index or table of contents to draw upon or reference material to study."  Docket # 103-2, p. 6.  There is no evidence that Hicks tried to use the paging system to prepare an opposition to the demurrer in *Whitted*.  Nor is there any evidence that Hicks tried to use the paging system to prepare an amended complaint in *Whitted*.

The Sacramento County Superior Court dismissed the *Whitted* action on July 25, 2007 due to plaintiff's failure to file an amended complaint.  *See* Docket # 112, p. 11.  (The dismissal appears to have been entered prematurely, but that apparent error is inconsequential to the present action.)

C.    Restrictions On Plaintiff's Access To Legal Materials

After his arrival at the DMH psychiatric program in May 2007, Hicks informed senior MTA Battin that he had three court deadlines.  He requested return of his property and requested physical access to the law library.  Battin said he would look into the matter.

On June 6, 2007, Hicks filed an inmate appeal, to which MTA Battin gave the informal response.  Docket # 103-2, p. 3.  Hicks "asked for either physical access to the law library or use of law library computer for a period of not less than 2-1/2 hrs. per week."  *Id.* at 3-4.  Battin denied the inmate appeal.  Hicks submitted the inmate appeal to the next level of review, "again stating, physical access to the law library is mandatory DMH needs to have a law library day.'" *Id.* at 4 (error in source).

On June 11, 2007, Hicks wrote a letter to warden Evans to protest being excluded from physical law library access. The warden turned the letter over to associate warden Trexler for a written response. Trexler's memorandum to Hicks dated June 21, 2007 discussed classification issues Hicks had raised in his letter, and then turned to Hicks' concern about the paging system. Trexler wrote: "You have been utilizing the paging system for Law Library and will continue to be allowed to utilize this system to meet your legal needs." Docket # 34-1, p. 23.

On June 18, 2007, Hicks was interviewed by defendant Melvin, "education principle (sic) who offered to provide a law computer within 24 hours in exchange for the withdrawal of [Hicks] appeal." Docket # 103-2, p. 5. Hicks withdrew the appeal, but Melvin did not provide the computer. Hicks also states that Melvin "did not return the appeal to the appeals coordinators office until June 28, 2007 (the last day of [his] PLU status) and the appeal was not returned to [Hicks] until July 2, 2007." *Id.*

Hicks reinstated his inmate appeal on July 4. Defendant Neotti granted the appeal at the second level on August 3. Hicks did not receive the physical access to the law library that the response stated was being provided.

In another one of his several cases pending in 2007, Hicks filed a motion on July 4, 2007, for law library access. Docket # 103-2, p. 6. The San Francisco County Superior Court granted some relief on July 26, 2007 and ordered the warden to grant Hicks "reasonable access, consistent with the Prison's security needs, the legal materials to respond to the motion to be heard on September 12, 2007 to declare Mr. Hicks a vexatious litigant." Docket # 103-3, p. 12. Hicks then was allowed to use the law computer at the prison. Docket # 103-2, p. 7. When Hicks used the law computer on July 27, 2007, he was the first inmate at D-facility DMH to do so. *Id.* At the time, "no D-facility DMH inmate was granted law library access except by 'paging.'" *Id.* at 8.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claim occurred at Salinas Valley in Monterey County, which is located within

1   the Northern District.  *See* 28 U.S.C. §§ 84, 1391(b).  This court has federal question jurisdiction

2   over this action brought under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.

3

### LEGAL STANDARD FOR SUMMARY JUDGMENT

5          The court will grant summary judgment "against a party who fails to make a showing

6   sufficient to establish the existence of an element essential to that party's case, and on which that

7   party will bear the burden of proof at trial . . . since a complete failure of proof concerning an

8   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

9   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*,

10  477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under

11  governing law, and a dispute about a material fact is genuine "if the evidence is such that a

12  reasonable jury could return a verdict for the nonmoving party").

13         Generally, as is the situation with defendants' challenge to the due process claim, the

14  moving party bears the initial burden of identifying those portions of the record which

15  demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the

16  nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions,

17  answers to interrogatories, and admissions on file,' designate 'specific facts showing that there

18  is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (citations omitted).

19         Where, as is the situation with defendants' qualified immunity defense, the moving party

20  bears the burden of proof at trial, she must come forward with evidence which would entitle her

21  to a directed verdict if the evidence went uncontroverted at trial.  *See Houghton v. Smith*, 965

22  F.2d 1532, 1536 (9th Cir. 1992).  She must establish the absence of a genuine issue of fact on

23  each issue material to his affirmative defense.  *Id.* at 1537; *see also Anderson*, 477 U.S. at 248.

24  When the defendant-movant has come forward with this evidence, the burden shifts to the non-

25  movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

26         A verified complaint may be used as an opposing affidavit under Rule 56, as long as it

27  is based on personal knowledge and sets forth specific facts admissible in evidence.  *See*

28  *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's

verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).  Hicks' second amended complaint is verified and therefore may be considered as evidence.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.

## DISCUSSION

A.    <u>Access To The Courts Claim</u>

A constitutional right of access to the courts exists, but to establish a claim for any violation of the right of access to the courts, the prisoner must show that there was an inadequacy in the prison's legal access program that caused him an actual injury.  *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).  To prove an actual injury, the prisoner must show that the inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement.  *See id.* at 355.  Examples of impermissible hindrances include: a prisoner whose complaint was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known; and a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable even to file a complaint.  *See id.* at 351.

Hicks has failed to show a triable issue of fact that he suffered an actual injury as a result of being limited to a paging system.  Hicks has provided evidence that he lost the *Whitted* action, and has provided evidence that he was limited to a paging system.  What he has not done is provide any evidence that links those two things, and the absence of such evidence is fatal to his

access to the courts claim.

Hicks has incorrectly contended that there was a mandatory duty to provide a law library or law computer. *Lewis v. Casey* specifically rejected the argument that the right at issue is a right to a law library or legal assistance. *See Lewis*, 518 U.S. at 350; *see also id.* at 351 ("In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'")  Hicks had to provide evidence to show that the paging system made available to him actually was inadequate.  He did not present such evidence.  He did not even present evidence that he tried to use the paging system.

Hicks has stated: "I was so stymied by the inadequacies of the 'paging system' that I was unable to file an (sic) responsive pleading."  Docket # 103-2, p. 6.  This statement merely parrots the legal standard from *Lewis*.  *See Lewis*, 518 U.S. at 351 (inmate must show that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim – a showing that he might make by showing "that he had suffered arguably actionable harm that he wished to bring before the courts, but was *so stymied by inadequacies of the law library that he was unable even to file a complaint*").  Hicks could not avoid summary judgment with a conclusory allegation that he was stymied; he had to show a genuine issue of fact that he actually was stymied.  *See id.* at 358. He has not done so.  Hicks also has stated that he had "no index or table of contents to draw upon or reference material to study" in the paging system.  That statement is insufficient to create a triable issue of fact that he suffered an actual injury.  He did not explain why he needed an index or table of contents, and did not identify the index, table of contents or reference materials he wanted to study.  If Hicks' sort of generic evidence sufficed, any prisoner could prevail on an access to courts claim by urging that there were unspecified reference materials he wanted but couldn't access.  And, because even an extremely well-stocked law library might not have every treatise or legal book ever published, the inmate would only need to say there was some other material (without even identifying what that material was) that he wanted but that was not available to him.

The paging system at Salinas Valley apparently required that the inmate know what he

wanted in order to obtain it though the paging system.  Hicks' efforts to portray himself as completely lost when confronted by that paging system are undermined by the evidence in the record.  Even by his own description, Hicks was not a novice litigator.  *See* Docket # 34, p. 5 (Hicks had a hearing on June 22, 2007 in a matter pending in small claims court in San Bernardino); *id.* at 6 (Hicks had a small claims court hearing in Kings County on May 4, 2007); *id.* at 7 (Hicks had an action pending in San Francisco County Superior Court in July 2007); Docket # 103-2, p. 6 (while the deadline for the amended complaint in *Whitted* approached, Hicks was filing a motion in his San Francisco County Superior Court action).   Also, the demurrer in *Whitted* cited five cases, including a case that purportedly listed the elements of a prima facie case of negligence and another case that purportedly listed the elements of a prima facie case of intentional infliction of emotional distress.[3]   Any one of those cases could have been ordered through the paging system and would have been an easy and obvious starting point for any research to oppose the demurrer or prepare the amended complaint.  There is no evidence that Hicks attempted to look at any of those cases.  In fact, there is no evidence that Hicks made *any* effort to use the paging system.

The undisputed evidence also shows that the demurrer was served on Hicks a month before he even arrived at Salinas Valley.  He has offered no evidence about his efforts to oppose the demurrer in that time period.  He also offers no evidence that he attempted to obtain an extension of time to file his opposition to the demurrer or an extension of time to file the amended complaint in the *Whitted* action.

In light of the absence of any evidence that Hicks tried to prepare an opposition to the demurrer, tried to prepare an amended complaint, or tried to make use of the paging system, no reasonable jury could find that he suffered actual injury as a result of being limited to use of the paging system and not having access to a law computer or a law library.

Hicks has argued strenuously that the court cannot look at the *Whitted* demurrer papers, and suggests that this court can only look at the documents he chooses to provide from that

---

[3]On its own motion, the court takes judicial notice of the complaint, the minute order, the demurrer papers, and the dismissal order in the *Whitted* action.  *See* Fed. R. Evid. 201(c).

action, i.e., the complaint and court orders.  He misunderstands the purpose for which the documents are being used.  The court can and does look at the statements made in the demurrer so it can determine whether Hicks needed to do legal research, and so it can consider his arguments about the inadequacies of the paging system for the allegedly necessary research.[4] *See Staehr v. Hartford Financial Services Group, Inc.,* 547 F.3d 406, 424 (2d Cir. 2008) (court could take judicial notice of filings and other public documents, not for the truth of the matters therein but rather to establish that the statements therein had been made); *see also Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (court could take judicial notice of state court filings that were directly relevant to petitioner's claim).  The order of dismissal with leave to amend in the *Whitted* action sustained the demurrer "with leave to amend for failure to state a cause of action for the reasons set forth in defendant's memorandum of points and authorities," Docket # 112, p. 9.  Consulting the demurrer and memorandum of points and authorities in support thereof allows this court to understand the nature of the alleged deficiencies in the *Whitted* complaint.  Although Hicks worries that it might, the court does not make any finding as to the merits of the demurrer, the complaint, or even the court orders in *Whitted*.  Instead, the court uses the information about what the *Whitted* defendant argued in the demurrer to consider whether Hicks suffered an actual injury in being limited to a paging system when the demurrer was pending and when his amended complaint was due.

When the evidence is viewed in the light most favorable to Hicks, and inferences therefrom drawn in his favor, no reasonable jury could return a verdict for him and against defendants.  Defendants therefore are entitled to judgment as a matter of law on the access to the courts claim.

B.    Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for

---

[4]Not all demurrers require legal research to oppose or to amend in response.  For example, if the demurrer argued that the complaint was unintelligible or uncertain, *see* Cal. Code Civ. Proc. § 430.10(f), the plaintiff would not need access to law books to cure that defect.

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists.   First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201.   If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. *See id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   Although *Saucier* required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed in the preceding section, the evidence in the record does not establish a violation of Hicks' constitutional rights.  Defendants prevail on the first step of the *Saucier* analysis.

Even if a constitutional violation had been shown, however, defendants would prevail on the second step of the *Saucier* analysis.  Defendants argue that, even if they were responsible for plaintiff being restricted to use of a paging system – a fact which they dispute – they are entitled to qualified immunity because no reasonable prison official would have believed that providing Hicks access to legal materials only through a paging system would violate the law, given his violent and disruptive history. The court agrees.  Hicks had an extensive disciplinary record, and had amassed a very high classification score due to his serious rule violations and threats to staff. Just a week before the demurrer hearing, Hicks threatened a staff member when she said something Hicks didn't like. *See* Docket # 98-1, p. 2 ("'I'll give you hell from me and I'll do

something to you if I get a chance to get out of here.'") *Lewis* stated that prison officials could restrict law library access for legitimate penological interests, such as restricting the movement of dangerous and violent inmates. *See Lewis*, 518 U.S. at 361. In light of Hicks' extensive history of discipline and threats to staff, a reasonable prison official would not have understood that limiting him to a paging system for legal research would violate the prisoner's constitutional rights. Defendants are entitled to judgment as a matter of law on the qualified immunity defense.

C.     Miscellaneous Matters

Defendant Battin never was served with process. Nonetheless, judgment will be entered in favor of Battin as well as those defendants who moved for summary judgment because the same facts support judgment for all of them, and Hicks had a "full and fair opportunity to brief and present evidence" on the dispositive issues. *See Columbia Steel Fabricators v. Ahlstrom Recovery*, 44 F.3d 800, 802-03 (9th Cir. 1995); *see also Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

Hicks' "ex parte request of permission to appeal partial ruling of the court" is DENIED as moot. (Docket # 104.)

Hicks' motion to compel discovery, filed after the motion for summary judgment was fully briefed, is DENIED as moot. (Docket # 115.) The court has not construed that motion to be a motion under Federal Rule of Civil Procedure 56(d) motion because Hicks did not label it that way, and comes nowhere near to making the showing necessary to obtain any sort of relief under Rule 56(d), i.e., he did not explain what information was sought and how it would preclude summary judgment. *See Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).

/   /   /

/   /   /

/   /   /

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. (Docket # 96.)   Defendants are entitled to judgment as a matter of law on the merits of the access-to-the-courts claim and on their defense of qualified immunity.  Judgment will be entered in all defendants' favor and against plaintiff on his § 1983 claims.

The clerk will close the file.

IT IS SO ORDERED.

Dated: October 29, 2012

_____
SUSAN ILLSTON
United States District Judge